# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

SFG COMMERCIAL AIRCRAFT )
LEASING, INC., )
)
        Plaintiff, )
)   CAUSE NO. 3:15-CV-324
      vs. )
)
MONTGOMERY EQUIPMENT COMPANY, )
INC., *et al.*, )
)
        Defendants. )

## OPINION AND ORDER

This matter is before the Court on the "Plaintiff's Motion for Summary Judgment," filed by the plaintiff, SFG Commercial Aircraft Leasing, Inc., on December 30, 2016 (DE #42) and the "Plaintiff's Motion to Dismiss Defendant Paradise Airways Corp.," filed by the plaintiff, SFG Commercial Aircraft Leasing, Inc., on March 21, 2017 (DE #47). For the reasons set forth below, the motion for summary judgment (DE #42) is **GRANTED.** The Court **ORDERS** SFG Commercial Aircraft Leasing, Inc. to submit proposed forms of judgment, consistent with this Court's findings, by January 30, 2018. In addition, the motion to dismiss (DE #47) is **GRANTED**, and the claims against Paradise Airways Corp. are hereby **DISMISSED** without prejudice.

BACKGROUND

The original plaintiff, 1st Source Bank ("1st Source"), filed a complaint based on diversity jurisdiction against the defendants, Montgomery Equipment Company, Inc. ("Montgomery"), Dr. A. Thomas Falbo ("Dr. Falbo"), Paradise Airways Corp. ("Paradise"), and Spectra Jet, Inc. ("Spectra Jet"), on July 27, 2015. (DE #1.) The complaint, which describes a financing arrangement provided by 1st Source to Montgomery, alleges that Montgomery defaulted on the loan and that Dr. Falbo, who personally guaranteed Montgomery's loan obligations, has failed to pay as required by his guarantee. (*Id.* at 2-3.) On August 20, 2015, Spectra Jet was dismissed from the lawsuit without prejudice. (DE #8.) Montgomery and Dr. Falbo filed answers on September 29, 2015. (DE #13 & DE #14.) 1st Source requested an entry of default against Paradise on October 1, 2015, and the Clerk entered the default on October 6, 2015. (DE #15 & DE #16.) On December 9, 2015, 1st Source filed a motion to substitute SFG Commercial Aircraft Leasing, Inc. ("SFG") as the party plaintiff in this case because it is the successor in interest to 1st Source. (DE #23.) The motion was granted, 1st Source was terminated, and SFG was

added as the proper plaintiff. (DE #26.) Discovery in this case closed on August 29, 2016. (See DE #34.) SFG filed the instant motion for summary judgment on December 30, 2016. (DE #42.) Montgomery and Dr. Falbo filed a joint response on January 27, 2017. (DE #45.) SFG filed its reply on February 8, 2017. (DE #46.) SFG filed the instant motion to dismiss Paradise from the action on March 21, 2017. (DE #47.) Neither Montgomery nor Dr. Falbo have filed a response to the motion to dismiss. Thus, both motions are now ripe for adjudication.

## DISCUSSION

### Motion for Summary Judgment

#### *Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Non-compliance with local summary judgment rules may warrant a penalty -- the court is within its discretion to ignore facts a litigant has proposed that are not submitted in compliance with those rules. See *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). In this district, Local Rule

56-1 mandates that the moving party must include a "Statement of Material Facts" in its supporting brief and that a party opposing a summary judgment motion must file a response brief (or appendix) that includes "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(a),(b). The Seventh Circuit has also made it clear that:

> [a] district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. In short, judges are not like pigs, hunting for truffles buried in briefs.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (internal quotation marks, brackets, and citations omitted). Thus, when a non-movant fails to controvert a moving party's Statement of Material Facts with a properly supported Statement of Genuine Disputes, the movant's facts may be deemed admitted. *Id.* ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

*Material Facts*

Because Montgomery and Dr. Falbo's response is devoid of a "Statement of Genuine Disputes" or citations to any relevant evidence that would dispute SFG's "Statement of Material Facts," the well-supported facts presented by SFG are considered undisputed and will be accepted as true.[1] *Smith*, 321 F.3d at 683. The material facts are as follows:[2]

On August 27, 2012, 1st Source and Montgomery entered into a Loan and Security Agreement (the "Loan Agreement") in which 1st Source agreed to lend Montgomery $1,125,000.00 pursuant to a contemporaneously signed and executed document entitled PROMISSORY NOTE – Term (the "Note"). (DE #1-1 & DE #1-2.) The Note is "secured by, and subject in all respects to, the terms and conditions contained in the [Loan] Agreement, all of which are incorporated by reference into [the] Note." (DE #1-1, p. 1.) The Note references a "specific Collateral Schedule," attached to it

1 In addition to the original financial documents attached to the complaint, SFG has submitted the following: two affidavits of Richard Rozenboom, Vice President of SFG and Vice President and Senior Work-Out Officer of 1st Source, along with related emails and financial spreadsheets (DE #43-1 & DE #46-1); Montgomery and Dr. Falbo's Response to 1st Source's Request for Admissions (DE #43-2); and an affidavit, Curriculum Vitae, and expert opinion report of Delvin (Del) Fogg, President of Aviation Management Resources LLC, who was retained by SFG to perform expert services in this case (DE #43-3).

2 Having verified that the cited evidence supports each of the facts presented by SFG, the Court has borrowed liberally from SFG's brief (DE #43) throughout this section.

as SCHEDULE "A" ("Schedule A"), which describes the collateral Montgomery pledged to 1st Source as a 1998 Learjet 31A with Serial No. 154 and FAA Registration No. N154RT (the "Aircraft"). (*Id.* at 1-3.) Both Section A of the Note and the Loan Agreement itself require Montgomery to keep the Aircraft in good repair and operating condition. (*Id.* at 3; DE #1-2, p. 2.) The Loan Agreement also requires Montgomery to not permit "any lien, encumbrance, claim, security interest, mechanic's lien, levy, attachment or other interest of any individual or entity" attach to the Aircraft. (DE #1-2, p. 2.) Montgomery agreed that it is responsible for paying "any fees, costs, expenses, penalties, or interest incurred by [1st Source]" in connection with the Loan Agreement, including, but not limited to, costs incurred for inspections, appraisals, or monitoring of the Aircraft and costs associated with exercising its rights and protecting its interest in the Aircraft. (*Id.*) Specifically, the Loan Agreement states that Montgomery must reimburse 1st Source any money it expends for "taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the [Aircraft]" and for related attorney fees and costs. (*Id.*)[3]

---

3 In relevant part, paragraph 5(b) of the Loan Agreement states, "Customer shall also pay to Bank, or if requested by Bank, directly to the applicable vendor or other third party, any fees, costs, expenses, penalties or interest incurred by the Bank in connection with this Agreement, any Note or any of

Pursuant to the Loan Agreement, Montgomery is considered to be in default if, among other events, it fails to make payments as due or fails to perform any obligation under the Loan Agreement, Note, or Schedule A. (*Id.* at 2-3.) In the event of a default, 1st Source has the option of "declar[ing] all or any part of the remaining unpaid indebtedness . . . to be immediately due and payable . . . ." (*Id.* at 3.) In addition, the Loan Agreement allows 1st Source to exercise all rights and remedies provided in the Loan Agreement, the Uniform Commercial Code ("UCC"), or any other applicable law, which may include taking possession of the Aircraft or performing any of Montgomery's obligations that Montgomery failed to perform. (*Id.*) After a default has continued for thirty days, and for as long as the default continues, 1st Source is entitled to "charge interest at the rate

---

the Collateral, including without limitation, fees, costs or expense of: . . . (iii) inspection, appraisal or monitoring of the Collateral as Bank may conduct for itself or obtain from a third party in its discretion, (iv) exercising its rights herein or under applicable law to protect its interest in the Collateral by performing obligations of Customer in the event Customer fails to timely perform same, (v) taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the Collateral . . . All of the foregoing fees, costs, or expenses thus incurred or expended by Bank, and any other monies paid by Bank to collect Customer's obligations under any Note or protect its interests in the Collateral shall, at Bank's option, for each instance of fees, cost or expense so incurred or paid by Bank, either be added to the balance of the applicable Note or if more than one Note, then pro-rated among the Notes, and be subject to all of the provisions of this Agreement, or be paid immediately by Customer upon demand by Bank, with interest accruing on the amount so demanded at the Default Rate." (DE #1-2, p. 2.)

set forth in the applicable Note plus three percent (3%) per annum (the "Default Rate")." (*Id.*)[4]

On August 27, 2012, Dr. Falbo executed a Guaranty of Payment (the "Guaranty") in which he "unconditionally guarantee[d] . . . the full and prompt payment and performance when due of all Obligations due and to become due" to 1st Source by Montgomery pursuant to the Loan Agreement. (DE #1-3, p. 1.) The Guaranty defines those "Obligations" as "all existing and future indebtedness, liabilities and obligations of every kind, nature and description . . . whether direct or indirect, absolute or contingent, and whether now due and owing or hereafter due and owing . . . ." (*Id.*) Dr. Falbo agreed that the Guaranty is "absolute and unconditional, and nothing except final and full performance of all of the Obligations shall operate to discharge such liability." (*Id.*)[5]

In 2014, 1st Source discovered that the Aircraft was not airworthy, and the Vice President of SFG, Richard Rozenboom ("Mr. Rozenboom"),[6] personally met with Dr. Falbo to discuss the status

---

4 The Note lists the interest as a fixed rate of 4.5% per annum. (DE #1-1, p. 1.)
5 In his answer, Dr. Falbo admits to executing the Guaranty and "unconditionally guarantee[ing] 1st Source payment of the Note in full when due, and the obligations to 1st Source evidenced by the Note and the Loan . . . Agreement." (DE #14, p. 4.)

6 Mr. Rozenboom is also Vice President and Senior Work-Out Officer of 1st Source. (DE #43-1, p. 1.)

of the Aircraft and the need to restore it to airworthy condition. (DE #43-1, pp. 1-2.) Montgomery and Dr. Falbo have admitted that the Aircraft was not airworthy as of October 6, 2014. (*Id*. & DE #43-2, p. 1.) At the meeting, Dr. Falbo agreed that Montgomery was prepared to undertake whatever actions were necessary to repair the Aircraft and return it to airworthy status. (DE #43-2, p. 2.) It was determined that Dr. Falbo had already engaged Paradise and another affiliated company to repair the Aircraft and that an invoice for work performed had been sent to Dr. Falbo prior to October 3, 2014. (DE #43-1, pp. 2-3, 7.) Montgomery and Dr. Falbo have admitted that the Aircraft was not airworthy and in good repair from December of 2014 through May of 2015 but insist that Montgomery was taking all action to make it airworthy during that time. (DE #43-2, pp. 2-3.) Additionally, on June 19, 2015, Paradise recorded a Verified Claim of Lien with the Broward County, Florida Commission and with the Federal Aviation Administration ("FAA"). (*Id*. at 3 & DE #43-1, p. 3.)

Based on the foregoing, 1st Source determined that Montgomery was in default and issued a DEMAND AND ACCELERATION NOTICE (the "Notice") to Montgomery and Dr. Falbo on May 29, 2015. (DE #43-1, p. 3 & DE #1-4.) The amount due as of June 1, 2015, was $796,778.85, but Dr. Falbo made additional payments after the

receipt of the Notice which were later applied to the balance of the Note. (*Id.*) 1st Source repossessed the Aircraft on July 22, 2015, with the intention to sell it once restored to airworthy status. (DE #43-1, pp. 3-4.) 1st Source assigned its rights, title, and interest in the Note and Loan Agreement to SFG on December 3, 3015. (*Id.* at 4.)

In connection with repairing the Aircraft and attempting to return it to airworthiness, 1st Source and SFG incurred expenses and made payments to Paradise and other aviation related businesses totaling $186,718.64, which were added to the principal amount of the debt. (*Id.* at 4, 10.) Additionally, expenses were incurred and payments were made to various parties totaling $144,366.20 for maintenance program expenses, insurance, hangar, rent, and other fees related to the Aircraft. (*Id.* at 4, 11.) 1st Source and SFG also incurred attorneys' fees, litigation expenses, and costs associated with the Aircraft and this case. (*Id.* at 4.)

According to Mr. Rozenboom, "[a]fter repairs to the Aircraft were completed, but before a return to service flight could be undertaken to confirm the airworthy status of the Aircraft, one of its wing structures was damaged by an unknown party. SFG learned of this incident in early September 2016." (*Id.* at 4-5.) Because such incidents are covered by its insurance, SFG does not intend

to charge Montgomery or Dr. Falbo with any costs related to the damage of the wing structure of the Aircraft. (*Id*. at 5.) Due to the foregoing circumstances, the Aircraft had not been sold as of the date of the filing of the instant motion for summary judgment, but SFG indicates that it "intends to sell the Aircraft in a commercially reasonable manner" and, once the sale is complete, credit the net proceeds to any judgment entered in this case. (*Id*.)

SFG indicates that it retained the President of Aviation Management Resources LLC, Delvin (Del) Fogg ("Mr. Fogg"), as an expert to evaluate the condition of the Aircraft, estimate the extent of the repairs, appraise the Aircraft, and prepare a report in this case. (*Id.*; see also DE #43-3.) Among other findings, Mr. Fogg concluded that the Aircraft had not been properly maintained or cared for over an extended period of time, and he determined that the work subsequently performed by Paradise to attempt to return the Aircraft to an airworthy status was reasonable. (DE #43-3, pp. 2-3, 9-10.)

SFG maintains records regarding the status of its loans and other business transactions as part of its regular business operations, and it employs individuals to regularly monitor those accounts and provide updates to SFG regarding their status. (DE

12

#43-1, p. 5.)  In his official capacity as Vice President of SFG and Senior Work-Out Officer of 1st Source, Mr. Rozenboom has access to these types of records and has specifically reviewed the records pertaining to Montgomery and Dr. Falbo.  (*Id.*)  Based on those records, Mr. Rozenboom affirms that the amount due and owing to SFG, "after taking into account all expenses of repairing and preserving the [Aircraft], but exclusive of attorneys' fees, litigation and costs," is $1,549,433.39 that is itemized as follows:

> Principal:   $1,248,902.25
> Interest:    $  116,324.27
> Late Fees:   $   39,804.67
> Loan Fees:   $       36.00
> Expenses:    $  144,366.20

(*Id.* at 5-6.)  Interest also accrues after December 30, 2016, at the Default Rate defined in the Loan Agreement.  (DE #1-2, p. 2; DE #1-1; DE #43-1, p. 6.)  As part of its reply brief, SFG has provided a supplemental affidavit of Mr. Rozenboom that reaffirms the aforementioned amounts due and provides additional clarification, by way of an exhibit, of how the principal balance was calculated.  (DE #46-1.)  Finally, 1st Source and SFG incurred attorneys' fees, litigation expenses, and costs associated with the effort to enforce their rights against Montgomery; SFG indicates that it will petition the Court for those fees and

expenses following the entry of judgment. (DE #43-1, p. 6; see also DE #43, p. 7.)

*Analysis*

A federal court sitting in diversity must apply federal procedural law and the appropriate state substantive law. *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004). Here, it is undisputed that Indiana substantive law controls this dispute. Section 3-308 of the UCC, which has been adopted in Indiana, provides that "[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." Ind. Code § 26-1-3.1-308(a). Once the validity of the signatures are established or proved, "a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under IC 26-1-3.1-301,[7] unless the defendant proves a defense or claim in recoupment." Ind. Code § 26-1-3.1-308(b).

---

[7] A person entitled to enforce an instrument is either: "(1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument under IC 26-1-3.1-309 or IC 26-1-3.1-418(d)." Ind. Code § 26-1-3.1-301.

With regard to a guaranty, courts in Indiana have defined it as "a conditional promise to answer for a debt or default of another person." *TW Gen. Contracting Serv., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009). As such, "the guarantor promises to pay only if the debtor/borrower fails to pay." *Id*. A guaranty is interpreted using traditional rules of contract law; specifically, a court must:

> give effect to the intentions of the parties, which are to be ascertained from the language of the contract in light of the surrounding circumstances. *Generally, the nature and extent of a guarantor's liability depends upon the terms of the contract*, and a guarantor cannot be made liable beyond the terms of the guaranty. Nevertheless, the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. Additionally, writings executed simultaneously and related to the same transaction will be construed together in determining the intent underlying the contracts. In other words, the guaranty and any other written agreements it incorporates must be evaluated in conjunction with one another in order to establish the parties' intentions.

*Id*. (citing *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 945–46 (Ind. Ct. App. 2006)) (citations omitted and emphasis added by citing court). A continuing guaranty is one that "covers all transactions, including those arising in the future, which are

within the contemplation of the agreement." *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585–87 (Ind. Ct. App. 2001).

Here, the following facts are undisputed: (1) the Loan Agreement and Note are authentic, having been signed and executed by Montgomery; (2) 1st Source was the original holder of the Note, and SFG, as the assignee of 1st Source, is now entitled to enforce the Loan Agreement and Note; (3) the Note is secured by the collateral described in Section A, namely the Aircraft; (4) the terms of the Loan Agreement and Note are unambiguous as to what constitutes default; (5) Montgomery defaulted under the terms of the Loan Agreement and Note by failing to keep the Aircraft in good repair and operating condition from at least October 6, 2014 through May 29, 2015, by allowing Paradise to place a lien on the Aircraft in June of 2015, and by failing to pay the entire amount due after the debt was accelerated via the Notice; (6) Dr. Falbo executed the Guaranty in which he unconditionally guaranteed full and prompt payment and performance when due to 1st Source by Montgomery pursuant to the Loan Agreement and Note; and (7) neither Montgomery nor Dr. Falbo satisfied the obligations and debt owed to SFG as of the date the motion for summary judgment was filed. As such, the Court finds that the issue of liability under the

Loan Agreement, Note, and Guaranty has been conceded by Montgomery and Dr. Falbo.

Rather than disputing liability, Montgomery and Dr. Falbo argue that SFG has not met its burden, as the movant of the instant summary judgment motion, of establishing the amount of damages. Specifically, Montgomery and Dr. Falbo argue that SFG hasn't designated the necessary evidentiary documents to support its claim for the principal balance, repair expenses, and non-legal expenses. This argument is a non-starter. Montgomery and Dr. Falbo misunderstand the burden-shifting requirements that have been articulated by the Seventh Circuit Court of Appeals. Specifically, "[a] party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 648 (7th Cir. 2011) (citing *Celotex*, 477 U.S. at 323). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Where a moving party "comprehensively challenge[s] the factual support and legal soundness" of an opponent's claim or defense by providing a well-supported

statement of material facts it alleges are not in dispute, the burden shifts to the non-movant to "introduce affidavits or cite evidence in the record demonstrating what genuine issues remained for trial." *Id*. (citations omitted). Here, despite cursory arguments to the contrary,[8] the Court finds that SFG provided sufficient proof of damages to have shifted the burden to Montgomery and Dr. Falbo to dispute the amount presented. Mr. Rozenboom's affidavit indicates that he has personal knowledge, by virtue of his employment position, of the damages at issue in this case, that the records he reviewed and relied on to determine that amount were kept by SFG as part of its regular course of business, and that, "taking into account all expenses of repairing and preserving the collateral," $1,549,433.39 is due on the loan as of December 16, 2016. This affidavit, plus the spreadsheets attached to it, along with Mr. Fogg's affidavit and report, is the type of admissible evidence that Rule 56 contemplates. See Fed. R. Civ. P. 56(c)(1)(A) (a moving party may support his position by "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

---

8  Montgomery and Dr. Falbo state, without further analysis, explanation, or evidentiary support of their own, "if there is a question about the principal amount, then there is a question about the amount of interest due. SFG's evidence leaves Montgomery asking how the principal was calculated because it certainly doesn't provide that information for Montgomery or the court." (DE #45, p. 5.)

those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Montgomery and Dr. Falbo claim that the numbers "just don't add up" with regard to the principal delineated on the Notice and the repair costs provided on the spreadsheets attached to Mr. Rozenboom's affidavit; however, the Court notes that Mr. Rozenboom's initial affidavit does not specifically indicate that the costs shown on the spreadsheets were all inclusive. Rather, in summarizing the final amount due in paragraph twenty-nine of his affidavit, Mr. Rozenboom cites to the records reviewed generally and states that the final itemized numbers have "tak[en] into account *all* expenses" (emphasis added). As pointed out by SFG, the fact that costs continued to accrue related to the Aircraft after the Notice was issued is not surprising. Additionally, in reply, SFG produced a supplemental affidavit of Mr. Rozenboom that reaffirms the total amount referenced in paragraph twenty-nine of his original affidavit and provides additional clarification, by way of a detailed spreadsheet

attached as an exhibit, as to how that amount was calculated. Regardless, if they wished to challenge the damages amount presented in SFG's well-supported motion for summary judgment, Montgomery and Dr. Falbo were required to submit their own affidavits or cite to other admissible evidence within the record to show that a genuine dispute exists. They simply did not do so.

Finally, although Montgomery and Dr. Falbo argue that they "shouldn't be required to continue to pay interest and storage fees on an aircraft that was repaired and ready for sale," they do not cite to a single piece of evidence or any relevant case law for this position. First, as SFG points out, the contentions that the Aircraft was deemed "airworthy" and "ready for sale" by September of 2016 and that SFG "may have had a buyer" at that time are without factual support in the record. Despite Montgomery and Dr. Falbo's assertion to the contrary, the Notice and Mr. Rozenboom's affidavit simply indicate that SFG "intend[ed]" to sell the Aircraft "sometime" after August 16, 2015; these documents do not establish that the Aircraft was airworthy or that SFG had definite buyers prepared to purchase the Aircraft. In fact, Mr. Rozenboom's affidavit specifically states that, while the repairs had been completed at some point, the wing was damaged *before* the test flight to confirm airworthiness could be undertaken.

Montgomery and Dr. Falbo have not submitted any evidence to the contrary.

Moreover, while Montgomery and Dr. Falbo claim that their obligations of repayment for repairs, storage costs, other fees, and interest related to the Aircraft do not extend beyond August of 2016 because the initial repairs had been made by that time, the record belies this claim. The Loan Agreement and Note are clear and unambiguous, and the Guaranty unconditionally guarantees payment of all such related costs and expenses. Nothing in the aforementioned documents limits the amount of damages in the way suggested by Montgomery and Dr. Falbo. The express terms of the Loan Agreement state that Montgomery is responsible for "any fees, costs, expenses, penalties, or interest" incurred in connection with the Loan Agreement; specifically, the Loan Agreement provides for recovery of all costs related to "taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the [Aircraft]." It does not establish a timeframe within which the Aircraft must be sold upon repossession, nor does it limit the recovery of costs incurred or the collection of interest until the Aircraft is sold or a judgment is entered. As to Dr. Falbo specifically, he signed the Guaranty, the plain language of which makes him responsible for the unlimited, ongoing

liabilities of Montgomery. See *TW Gen. Contracting Services, Inc.*, 904 N.E.2d at 1290.

Thus, the Court **GRANTS** the motion for summary judgment and finds that SFG is entitled to summary judgment against Montgomery and Dr. Falbo, jointly and severally, in the amount of $1,549,433.39, with prejudgment interest to be computed at the Default Rate from December 30, 2016, through the date of this Order or the date the aforementioned debt was satisfied in full by Montgomery or Dr. Falbo, whichever is earlier, plus attorneys' fees, litigation expenses, and costs. The Court **ORDERS** SFG to submit proposed forms of judgment consistent with this Court's findings by January 30, 2018. After final judgment has been entered, SFG may file a motion under Federal Rule of Civil Procedure 54(d)(2) and Northern District of Indiana Local Rule 54-1, seeking recovery of attorneys' fees, litigation expenses, and costs.

Motion to Dismiss

As noted in the background section above, SFG filed a motion to dismiss the pending claims against Paradise pursuant to Federal Rule of Civil Procedure 41(a)(2). (DE #47.) Neither Montgomery nor Dr. Falbo have filed a response to the motion to dismiss.

Rule 41(a)(2) provides that an "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Unless otherwise stated, such dismissal is without prejudice. *Id*. The Seventh Circuit has delineated several factors for a district court to consider when determining whether a plaintiff's motion for voluntary dismissal should be denied, including "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969). Rather than being mandatory, however, the factors are simply a guide for the trial court judge, with whom discretion ultimately rests, to consider. *Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980). "In exercising its discretion the court follows the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971) (citation omitted).

Here, all of the factors weigh in favor of dismissal. According to SFG, Paradise was named as a defendant in this action solely because of the lien it had placed on the Aircraft. Paradise never entered an appearance, and default was entered against it on October 6, 2015 (DE #16), so it is undisputed that Paradise neither incurred any effort or expenses in preparation for trial nor filed any motions on its own behalf. Both 1st Source and later SFG have been diligent in prosecuting this case since its inception. Plus, SFG's explanation for the need to take a dismissal, namely that it is unnecessary to seek an entry of judgment against Paradise because its claim of lien was released on January 7, 2016 (see DE #47, pp. 4-5), is persuasive. Finally, neither Montgomery nor Dr. Falbo have responded with any reason why the dismissal of Paradise would be inappropriate in these circumstances. Thus, the Court hereby **GRANTS** the motion to dismiss and **DISMISSES** the claims against Paradise without prejudice.

CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE #42) is **GRANTED**. The Court **ORDERS** SFG to submit proposed forms of judgment, consistent with this Court's findings, by January 30, 2018. In addition, the motion to dismiss (DE #47)

is **GRANTED**, and the claims against Paradise are hereby **DISMISSED** without prejudice.

ENTERED: January 16, 2018          /s/RUDY LOZANO, Judge
                                   United States District Court